## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

    Plaintiff,

  v.

ANGELO OCASIO,

    Defendant.

**REPORT AND
RECOMMENDATION**
10-CR-6096

### Preliminary Statement

By text Order of Judge Charles J. Siragusa, dated March 1, 2011, all pre-trial motions have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). (Docket # 75). The indictment in this multiple defendant case charges a wide ranging drug conspiracy that allegedly occurred from 1993 through March 2, 2011. See Second Superceding Indictment (Docket # 268). Defendant Angelo Ocasio is charged in Count 1 with narcotics conspiracy, and in Count 10 with possession and discharge of firearms in furtherance of drug crimes. See id.

Currently pending before the Court are defendant Ocasio's motion to suppress statements he allegedly made to the police on March 3, 2011. (Dockets ## 205, 408). On May 21, 2012, a suppression hearing was held and arguments were heard from the Government and defense counsel. On May 30, 2012, the defendant filed his post-hearing submissions (Docket # 254), and on June 6, 2012, the Government filed its post-hearing submissions (Docket #

257). The following is my Report and Recommendation as to the defendant's suppression motions.[1]

### Relevant Facts

The testimony during the May 21, 2012 suppression hearing revealed that on March 3, 2011, defendant Ocasio was in custody at the Monroe County Jail on State charges for violating probation. On that date at shortly before 8:00 a.m., Rochester Police Department ("RPD") Investigators Tom Cassidy and Tom Donovan and Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Christopher Robinson went to the Monroe County Jail to pick up defendant Ocasio to transport him to the Public Safety Building ("PSB"). The officers took defendant Ocasio to an interview room on the PSB's fourth floor. See Transcript of May 21, 2012 Hearing (hereinafter "5/21/12 Tr.") (Docket # 265) at p. 7.

RPD Investigator Tom Cassidy testified that once they arrived at the PSB's fourth floor, Cassidy "[r]ead [defendant Ocasio] his rights and interviewed him" using "a 3 by 5 RPD *Miranda* card" and

---

[1] The delay between the suppression hearing and the filing of this Report and Recommendation was caused by a variety of developments in this case, including, *inter alia,* the return of a Second Superceding Indictment (Docket # 268), the request of the defendant to review the charges in the new Indictment before arguing his omnibus motions, the argument of the original omnibus motions (Docket # 289), the filing of supplemental motions by the defendant (Dockets ## 401, 408), authorized delays for entry of a plea which was never consummated (Docket # 367), and the argument of the supplemental motions (Docket # 415).

Cassidy "[r]ead the rights verbatim from that card." Id. at p. 7. RPD Investigator Donovan also testified that he observed "Investigator Cassidy read [Ocasio] his *Miranda* warnings ... verbatim off the *Miranda* card." Id. at p. 48. Cassidy testified that he remembers "reading [Ocasio] his rights" and knows that "in every single case in the last 22 years that I've ever done ... if I read [defendants] their rights, I know that I used that card. I do it every time I do it. I do it every day, that's my job... I always use that card." Id. at pp. 25-26. Cassidy testified that "it's not" possible that he never used the card. Id. at p. 29. Investigators Cassidy and Donovan and Special Agent Robinson were all present when Cassidy read defendant Ocasio his Miranda rights. Id.

During the hearing the Government revealed that despite an "exhaustive search," the Government cannot find the Miranda rights card that Cassidy used with defendant Ocasio on March 3, 2011. See id. at p. 3. During the hearing Investigator Cassidy was shown photocopies of an RPD Miranda rights card with "waiver RPD 1185" written on it. Cassidy testified that the 1185 form was the same form as the form he used to read defendant his rights on March 3rd. Cassidy testified that the photocopies of the form he was shown at the hearing had the same statements and questions on it as the statements and questions that were on the rights card that he read from on March 3, 2011 when he interviewed the defendant, as the

3

"1185 is the form that we use in every case." Id. at p. 10. Cassidy testified that during his 22 years as a police officer he has used the Miranda rights card "hundreds of times to read people their rights." Id. Cassidy "never" reads the rights to the defendant by memory, rather he "always use[s] the form 1185," which has not been revised or changed since November 1999. Id. Investigator Donovan also testified that "[w]henever we're interviewing a suspect we use the *Miranda* card." Id. at p. 52.

Cassidy testified that he read the following rights to defendant Ocasio:

> You have the right to remain silent. You don't have to say anything if you don't want to... anything you do say can be used against you in a court of law... You have the right to talk to a lawyer before answering any questions and have him here with you... If you can't pay for a lawyer, one will be given to you before any questioning if you wish... If you do wish to talk to me, you can stop at any time.

Id. at p. 14. After reading Ocasio his Miranda rights, Cassidy then asked him the following two waiver questions: (1) "do you understand what I've told you," and (2) "with these rights in mind, do you agree to talk to me now." Id. at pp. 14-15. Cassidy testified that Ocasio responded "affirmatively" that he understood his Miranda rights and agreed to speak with Cassidy because he claimed to have "nothing to hide." Id. at p. 15. Investigator Donovan also testified that after being read his rights Ocasio "waived his rights and he agreed to speak with us." Id. at p. 48.

4

At that point, Investigators Cassidy and Donovan began interviewing defendant Ocasio, and Special Agent Robinson was present for approximately the first ten minutes of the interview. Id. at p. 15, 30. Cassidy testified that during the interview Ocasio never told the investigators that he already had an attorney representing him on his other (New York State criminal) case and never gave them that attorney's name. Id. at p. 37. Cassidy testified that he was "not aware that he had a lawyer. I think my understanding was he was sentenced so he wouldn't have had a lawyer on that [State case]. And he wasn't arraigned yet in federal court, so he wouldn't have had a lawyer" yet on the new federal criminal case. Id. at p. 37. Cassidy never asked Ocasio if he had a lawyer in his State case. Id.

The interview lasted for a little less than one hour, with a ten minute break after the first thirty minutes, and then another 15-20 minutes after the break. Id. at p. 15. Cassidy testified that they took the ten minute break after the investigators asked Ocasio to cooperate with them and he told them "he had to think about it" and he "asked us for time to think." Id. at pp. 15, 39. The investigators left the interview room for ten minutes to give Ocasio time to think and when they returned Ocasio said "that he needed more time to think about what he was ultimately going to say" to them. Id. at p. 41. The investigators then "continued to have a conversation" with Ocasio. Id. The interview concluded

5

approximately 15-20 minutes later because Ocasio had a scheduled federal court appearance that they had to get him to. Id. at p. 16. "Within the hour" after the interview concluded, Cassidy prepared an Investigative Action Report "from memory." Id. at pp. 35-36.

Cassidy testified that at no point during the interview did Ocasio ever ask for a lawyer or say that he no longer wanted to talk to the investigators. Id. at p. 16. Cassidy testified that Ocasio did not appear to be under the influence of drugs or alcohol during the interview, his answers were responsive to their questions, the investigators did not make Ocasio any promises or threaten him in any way, and did not physically, emotionally or mentally abuse Ocasio in any way. Id. at pp. 16-17.

During the hearing Cassidy testified that he is "not sure" where the Miranda rights card (that he read Ocasio his rights from) is, and he has "no idea" when it was lost, or who lost it. Id. at p. 24. Cassidy is aware of only one original copy of that card and "[w]e don't know where that card is." Id. Cassidy conceded that it is in fact "possible" that the rights card was "destroyed" or "misfiled" in either the RPD, ATF or the U.S. Attorney's Offices. Id. at p. 29. Cassidy testified that he has never previously lost a Miranda rights card in his 22 years on the police force. Id. at pp. 24-25.

During the May 21, 2012 suppression hearing, defendant Ocasio testified that his Miranda rights were never read to him during the March 3, 2011 interview with law enforcement and that he asked the investigators for an attorney that day. Id. at p. 64. Ocasio testified that he knew what his rights consisted of, he had previously been arrested "many times" and had been read his Miranda rights before. Id. at pp. 65-66. Mr. Ocasio also testified that he "smoked a whole pack of cigarettes" during the interview with the investigators. Id. at p. 65. Ocasio testified that the interview "[d]idn't seem long. About 20 minutes" and maintained that he "went through an entire pack of cigarettes in 20 minutes." Id. at p. 66.

## Discussion

With the instant motion, defendant Ocasio seeks to suppress the statements he made to police on the morning of March 3, 2011. Defendant contends that the statements were taken in violation of his Fifth and Sixth Amendment rights, because at the time he was questioned by the police and gave his statements he was in custody and (i) had not been read his Miranda rights, (ii) had requested an attorney but was not given one, and (iii) had legal representation already in place and representing him for his State law charges and was improperly questioned about the forthcoming federal charges while he was being held on the State charges. See Affirmation of

7

Gilbert R. Perez, Esq. (hereinafter "Perez Aff.") (Docket # 254) at ¶¶ 5-6, 11-13, 17.

1. Ocasio's Fifth Amendment Challenge to his Statements: Ocasio moves to suppress the statements he made to law enforcement on March 3, 2011 on grounds that he was not read his Miranda warnings prior to being questioned by the police during a custodial interrogation in violation of his Fifth Amendment rights.

It is well settled that police may not interrogate a suspect who has been taken into custody without first advising him of his Miranda rights. United State v. Newton, 369 F.3d 659, 668 (2d Cir. 2004). It is only in the context of a custodial interrogation that a defendant is entitled to be informed of his Miranda rights. Dickerson v. United States, 530 U.S. 428, 434-35 (2000); Tankleff v. Senkowski, 135 F.3d 235, 242-43 (2d Cir. 1998). Here, there is no dispute that defendant Ocasio was "in custody" for purposes of Miranda. There is also no dispute that law enforcement interviewed Ocasio while he was in custody – in other words, law enforcement engaged in a custodial interrogation with defendant. The issue before the Court is whether this custodial interrogation took place without reading Ocasio his Miranda warnings in violation of his Fifth Amendment rights.

I find Investigators Cassidy and Donovan's testimony credible that Cassidy did in fact read defendant Ocasio his Miranda rights prior to interviewing him on March 3, 2011. Investigator Cassidy

testified that during his 22 years as a police officer he used the form 1185 <u>Miranda</u> rights card each and every time when reading a suspect his or her rights and "never" reads the rights to a defendant by memory. See 5/21/12 Tr. at p. 10. Cassidy testified that prior to commencing the interview he read defendant Ocasio his rights by using the form 1185 "RPD *Miranda* card" and "[r]ead the rights verbatim from that card." <u>Id.</u> at p. 7. Investigator Donovan also testified that he observed "Investigator Cassidy read [Ocasio] his *Miranda* warnings ... verbatim off the *Miranda* card" and stated that whenever the RPD interviews a suspect "we use the *Miranda* card." <u>Id.</u> at pp. 48, 52. The Investigators also both testified that Ocasio stated that he understood his rights and agreed to waive them and speak with the police. While it is unfortunate that the rights card has been lost, there is nothing in the record to suggest that the Investigators' testimony lacks credibility. By the same token, I have carefully considered the defendant's very brief and focused testimony about being questioned on March 3rd and did not find it particularly credible when evaluated in light of the other hearing testimony.

In sum, after considering all the hearing testimony, I find that the Government produced sufficient evidence to establish that defendant Ocasio was read his <u>Miranda</u> rights, understood his <u>Miranda</u> warnings and chose to give up his rights and speak with the police. As a result, Ocasio's statement is admissible and should

not be suppressed. Accordingly, it is my Report and Recommendation that defendant Ocasio's motion to suppress his March 3, 2011 statements to law enforcement on grounds that his Fifth Amendment rights were violated should be denied.

2. Ocasio's Sixth Amendment Challenge to his Statements: Ocasio moves to suppress the statements he made to law enforcement on March 3, 2011 on the alternative grounds that his Sixth Amendment right to counsel was violated by the investigators.

"After charges have been filed, the Sixth Amendment prevents the government from interfering with the accused's right to counsel." Illinois v. Perkins, 496 U.S. 292, 299 (1990). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Once the right to counsel has attached and has been invoked, any subsequent waiver during a police-initiated custodial interview is ineffective. "The Sixth Amendment right, however, is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced." McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). The Supreme Court has instructed that "the right to counsel does not attach until the initiation of adversary judicial proceedings," "whether by the way of formal charge, preliminary hearing, indictment, information, or arraignment." United States v. Gouveia, 467 U.S. 180, 188 (1984)(citation

omitted). The Court has indicated that the right does not attach during an ongoing criminal investigation. Rather,

> [i]t is only at that time that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have <u>solidified</u>. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.

<u>Id.</u> at 189 (emphasis added)(quotation and citation omitted). Thus, where criminal proceedings have not yet been initiated, "a suspect in a criminal investigation has no constitutional right to the assistance of counsel." <u>Davis v. United States</u>, 512 U.S. 452, 456-57 (1994).

Here, defendant asserts that he was in custody on State charges on March 3, 2011 when he was interviewed by the RPD investigators, and the investigators were aware of his detention and charges but the investigators "failed to contact Mr. Ocasio's attorney on the State charges, and failed to ask Mr. Ocasio about his legal representation on his State charges." <u>See</u> Affirmation of Gilbert R. Perez, Esq. (Docket # 254) at ¶ 13. Defendant argues that his Sixth Amendment rights were violated because the RPD investigators unlawfully questioned him after his arrest on federal charges before his federal arraignment, while he was being held on State charges, by depriving him of his right to counsel.

The Court disagrees. The Sixth Amendment right to counsel is offense specific and does not attach until a prosecution is

commenced. At the time the RPD investigators interviewed Ocasio, Ocasio had not yet been arraigned, nor had an initial appearance before a federal judge, nor had he hired or been assigned an attorney to represent him on his federal charges. Thus, at the time of his interview with the RPD investigators, Ocasio's Sixth Amendment right to counsel had not yet attached for the federal charges for which he had been indicted. As a result, I find that defendant Ocasio's Sixth Amendment rights were not violated. See United States v. Allen, 169 F. App'x 634, 637 (2d Cir. 2006)(the defendant's "appearance with counsel at his arraignment on separate state charges did not invoke a Sixth Amendment right to counsel that applied to the federal charges that were the subject of the[] questioning, for the Supreme Court has clearly stated that the Sixth Amendment right to counsel is offense specific"); United States v. Mapp, 170 F.3d 328, 334 (2d Cir. 1999)(finding that the Sixth Amendment right to counsel had not yet attached as to the federal charges for defendant who was incarcerated on separate state charges). Accordingly, it is my Report and Recommendation that Ocasio's motion to suppress the March 3, 2011 statements he made to law enforcement on grounds that his Sixth Amendment right to counsel was violated should be denied.

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motions to suppress (Dockets ## 205, 408) be **denied**.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: May 7, 2013
       Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[2]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections ... shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated:   May 7, 2013
         Rochester, New York

---

[2] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. <u>United States v. Andress</u>, 943 F.2d 622 (6th Cir. 1991); <u>United States v. Long</u>, 900 F.2d 1270 (8th Cir. 1990).